**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.: 15-308** |
| **v.** | * | **SECTION: "H"** |
| **LEJEUNE HARRIS** | * | |

* * *

## FACTUAL BASIS

Had this matter proceeded to trial, the government would have proven beyond a reasonable doubt, through the introduction of relevant, competent, and admissible testimony and other evidence, the following facts to support the allegations against the defendant, **LEJEUNE HARRIS**.

From at least August 1, 2014, and continuing through May 1, 2015, **LEJEUNE HARRIS** conspired with LARRY DUPOR and other persons to distribute more than one kilogram of heroin in the Eastern District of Louisiana and elsewhere.

On April 30, 2015, during the conspiracy, law enforcement officers of the Calcasieu Parish Combined Anti-Drug Team ("CAT") Narcotics Taskforce were performing traffic enforcement on the eastbound lanes of Interstate-10 in Calcasieu Parish. At approximately 8:16 p.m., a CAT officer conducted a lawful traffic stop of a red Fiat rental vehicle being driven by Person A. During the stop, Person A consented to a search of the vehicle. There was a brown

luggage bag on the front passenger floorboard, and within the bag the officer found a brown paper sack containing four bundles wrapped with black electrical tape, containing a total of approximately 1,141 grams of compressed heroin powder. This heroin had been provided to Person A by DUPOR for the purpose of delivering it to **HARRIS** in New Orleans. Person A agreed to an interview with law enforcement and admitted that DUPOR had paid her $1,000.00 to courier the package of heroin from Houston to **LEJEUNE HARRIS a/k/a "La"** at a car wash in New Orleans East. At the time, Person A was expecting DUPOR to direct her by phone to deliver the heroin to **"La"** the following morning at around 8:00 or 9:00 a.m.

Agents met with Person A early in the morning on the following day, May 1, 2015, and debriefed her about the current trip and her past deliveries to **"La"**. Person A stated that she had been making these deliveries to **"La"** at the Hollywood Car Wash two to three times per month for the past several months. A secretary of state records check gave an association between Hollywood Car Wash and **LEJEUNE HARRIS.** Agents showed Person A a photograph of **HARRIS** and she positively identified him as **"La"**. A criminal history check showed that **HARRIS** had multiple felony drug convictions. Person A said that she had no means to contact **HARRIS** directly; she was given directions by DUPOR, and she assumed that DUPOR contacted **HARRIS**. During the debriefing, Person A received a phone call from a phone number from DUPOR on his "throw" phone. During the call, DUPOR asked whether Person A was "ready"; she replied, "Yes"; then DUPOR hung up. A short time later, Person A received a text message from DUPOR's phone which read, "3 packs wash at 9 00 9 30". By sending the text message, DUPOR was directing Person A to deliver three of the four packages of heroin (approximately 750 grams) to **HARRIS** at the Hollywood Car Wash on Chef Menteur Highway in New Orleans East, within the Eastern District of Louisiana.

Person A agreed to conduct a controlled delivery of sham heroin to the car wash in order to further the investigation. At around 9:00 a.m., Person A drove into the lot of the Hollywood Car Wash with the sham, and **HARRIS** approached her vehicle from the passenger side, carrying a cardboard box of DVDs. **HARRIS** entered the vehicle from the passenger side; took the three sham packages and placed them in his DVD box; then handed Person A $2,000.00 in cash. **HARRIS** exited the vehicle and walked, with the box, toward an office building located on the lot. Person A drove away while agents pulled into the lot to secure the premises and detain all persons on the property. **HARRIS** entered the building, then shortly thereafter exited the building, and he was detained near the front door. The building was secured and no other persons were located inside. Officers applied for and obtained a state search warrant to search the building. When the building was searched, agents found the three sham packages inside a large wooden box containing the central air conditioning unit for the building, accessible through an access hole located on the top of the wooden box. Also inside the box was another bag containing approximately 479 grams of heroin. Before they were placed in the large wooden box, **HARRIS** had knowingly and willingly possessed the three sham packages representing approximately 250 grams of heroin each and the bag of actual heroin, and he maintained constructive possession of these items there.

**Drug Quantities**

The government and the defendant, **LEJEUNE HARRIS**, stipulate and agree that the defendant should be held accountable for at least one kilogram but less than three kilograms of heroin, as the government's evidence demonstrates that this amount of heroin was distributed during the course of the conspiracy as a result of the defendant's conduct and the reasonably foreseeable conduct of his co-conspirators.

**Limited Nature of Factual Basis**

This proffer of evidence is not intended to constitute a complete statement of all facts known by the defendant, **LEJEUNE HARRIS**, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty.

**APPROVED AND ACCEPTED:**

8/11/16
LEJEUNE HARRIS (date)
Defendant

8/10/16
JAMES WILLIAMS (date)
Co-Counsel for Defendant

8/11/16
ROGER JORDAN (date)
Co-Counsel for Defendant

8/11/2016
MICHAEL B. REDMANN (date)
Assistant United States Attorney